RECEIVED

MAR 0 5 2009

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| THU THANH BUI | CIVIL ACTION NO. 07-1712 |
| VERSUS | DISTRICT JUDGE WALTER |
| HORSESHOE ENTERTAINMENT | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment [Record Document 33] filed on behalf of Defendant, Horseshoe Entertainment. Plaintiff opposes this motion. [Rec. Doc. 38]. For the reasons assigned herein, Defendant's motion is **GRANTED.**

## I.    FACTUAL BACKGROUND

In early 2005, Horseshoe Entertainment ("Horseshoe") reopened the poker room at the Horseshoe casino in Bossier City, Louisiana. Applicants were hired by Horseshoe as poker dealers contingent upon attending a poker dealer school and passing an audition. Individuals with limited or no prior live poker dealing experience were required to attend every session of the school, while those with significant live poker dealing experience were only required to attend the last few days of the school. Every individual, regardless of their prior dealing experience, was required to successfully pass an audition before being allowed to work as a poker dealer at Horseshoe. [Jones Affidavit, ¶¶ 4-5]. At all relevant times, Dennis Jones ("Jones") worked as the Poker Room Manager at Horseshoe and was responsible for auditioning every applicant for poker dealer positions and making all employment related decisions with respect to positions in the poker room. [Jones Affidavit, ¶¶ 1, 2, 6].

Page 1

Plaintiff Thu Thanh Bui ("Plaintiff"), an Asian female, age 55, was hired by Horseshoe as a poker dealer, effective March 14, 2005, contingent upon her successfully attending the dealer school and passing an audition. [Depo. at 109].[1] Plaintiff had prior experience working at casinos in the Bossier City area, but her experience was limited to tables games such as three-card poker, Caribbean Stud, Let It Ride, Pai-Gow, War Game, and blackjack. [Depo. at 37-38]. She had no experience in dealing live poker. [Depo. at 37-38; Jones Affidavit, ¶ 7].

Plaintiff attended the dealer school sponsored by Horseshoe, which focused on all aspects of dealing live poker, including how to pitch cards. [Depo. at 90-91]. Because of her limited experience in dealing live poker, she was required to attend every session of the school. [Jones Affidavit, ¶ 7]. Plaintiff completed the poker dealer school, but unfortunately, she did not pass her audition. According to Jones, her "dealing skills, especially her pitching and speed, were woefully inadequate for purposes of allowing her to deal live poker" and she needed additional practice to improve her skills. [Jones Affidavit, ¶¶ 8-9]. However, Jones found that Plaintiff did appear to have good customer service skills, so he offered her a position as a chip runner, at a rate of $7.50 per hour plus tips, until she was able to pass another audition. [Depo. at 104-05]. Three weeks later, Jones offered her a position as a brush person, with a pay rate of $8.50 per hour plus tips. [Jones Affidavit, ¶ 9].

In an effort to help Plaintiff improve her skills, Jones allowed her deal in live games when the poker room was relatively slow. At her request, Jones gave her two additional auditions to become a dealer, but she failed to pass those auditions as well. In fact, Jones observed that "her

---

[1] All "Depo." citations refer to Plaintiff Bui's deposition testimony that was taken on December 19, 2008. See Record Document 45, Deposition Excerpts.

dealing skills declined, if anything, and were still far short of what was needed to allow her to be a poker dealer at Horseshoe." [Jones Affidavit, ¶ 13]. During the few times Plaintiff was allowed to deal in live games, Jones received numerous complaints from customers about her dealing skills, particularly her slowness in dealing. [Jones Affidavit, ¶ 14]. Jones informed Plaintiff that he could no longer allow her to deal in live games because Horseshoe's poker room was not intended to be a "break-in room," meaning that Horseshoe's poker room was reopened with the intent to be the premiere poker room in the Shreveport-Bossier market and was not intended to provide on-the-job training on a regular basis. [Jones Affidavit, ¶ 8].

Throughout her employment, Plaintiff had difficulty getting along with her co-workers and often became emotional when asked to correct her behavior or when other job performance issues were raised. [Depo. at 136, 144-51; Exs. 12-13; Jones Affidavit, ¶ 15]. Her behavioral problems are well-documented not only with respect to her employment at Horseshoe, but also with respect to her employment at other area casinos. [Depo. at 144-51]. During her first 90 days at Horseshoe, Plaintiff's supervisors noted in writing that she was having problems with co-workers and that she needed "to listen to instructions better" and "do as explained to her." [Exs. 7-9]. At her deposition, Plaintiff admitted that she resented her co-workers and saw no reason to be friendly toward them. [Depo. at 121-22].

On August 6, 2005, Plaintiff became angry after a dealer got up from the table without pushing his chair under the table. Plaintiff started yelling to her shift-supervisor, Howard Levine ("Levine"), that she "will pick up after players but not dealers," and continued yelling at him as he walked to the podium. Levine gave Plaintiff a written warning and informed her that he "would not tolerate this insubordination." [Depo. 132-134; Ex. 11].

On October 23, 2005, Plaintiff received a documented coaching notice for continuously requesting to deal while working on the poker room floor. Despite being told on numerous that she must pass an audition before she would be allowed to deal, Plaintiff started crying to the point that she had to be sent home. Judith Yates, the shift supervisor at that time, noted: "This is an unprofessional display of behavior that our guests and her co-workers should not be subjected to. This behavior also prevents Thu from being able to do her job." [Ex. 12]. Plaintiff was warned that the subject of dealing should not be brought up again while working on the poker room floor and that further disciplinary action would be taken, including termination, if the behavior continued. [Ex. 12].

Plaintiff's annual performance evaluation, given on February 26, 2006, again noted she had "problems with co-workers at times." [Ex. 10]. On March 19, 2006, Plaintiff again became upset about not being able to work as a poker dealer. Her displeasure was directed at Levine, Doug Tilton, and Andrea Cruickshank, all of whom submitted written statements describing Plaintiff's disrespect and verbal attacks against co-workers. Plaintiff received a final written warning and was placed on a 90-day developmental plan, which specified that the following areas required improvement: conflict with employees, discussing dealing options on the casino floor, improving her dealing skills before asking for another audition, and maintaining an upbeat and positive attitude toward all Horseshoe management and staff. [Ex. 15].

On June 27, 2006, Plaintiff was again written up for acting insubordinately to a shift supervisor, King Gladney. She was suspended pending an investigation of the incident. [Exs.17-19; Jones Affidavit, ¶ 17]. On June 28, 2006, after Jones received a Performance Documentation notice and two Incident Reports describing the incident, and after speaking to some of the persons involved, he made the decision to terminate Plaintiff from employment for gross insubordination, a clear

violation of Horseshoe's Conduct Standards policy. [Jones Affidavit, ¶ 17; Ex. 30].

Plaintiff requested and received an appeal of her termination to Horseshoe's Employee Review Board ("the Board"). [Ex. 18]. Under Horseshoe's Conduct Standard policy, any employee may seek a review of managing decisions resulting in termination. The Board consists of three impartial members: (1) an employee representative from the employee's department, (2) a management representative having no jurisdiction over the employee's department, and (3) a Human Resources representative who has not been involved in the employee's issue. [Ex. 31]. At the Board meeting, Plaintiff was given an opportunity to provide testimony and any documents demonstrating that her termination was improper. [Depo. at 178-86]. Plaintiff never complained to the Board that she was being discriminated against on the basis of her age, gender, race or national origin, nor did she complain that her termination was in retaliation of any protected activity. At the conclusion of the meeting, the Board voted unanimously to uphold Plaintiff's termination.

On September 26, 2006, Plaintiff submitted a Charge Questionnaire to the Equal Employment Opportunity Commission ("EEOC"). [Ex. 23]. On February 12, 2007, she filed a Charge of Discrimination with the EEOC alleging that she had been discriminated against on the basis of her race, national origin, sex, and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"). [Ex. 22]. The acts forming the basis for her discrimination claims include:

1) The failure to initially hire Plaintiff as a poker dealer;

2) The failure to properly pay Plaintiff the correct wages in March/April of 2005;[2]

---

[2]On the March 24, 2005 and April 7, 2005 paychecks, Plaintiff was paid at a rate of $4.25 per hour, which Plaintiff alleges is the hourly rate for poker dealers. However, Plaintiff was not

3)      The failure to promote Plaintiff to a poker dealer during her employment;

4)      Levine's purported sexual remark ("Thu don't bend over like that I am a single man, it makes me horny");

5)      Several alleged remarks by Jones and others that Bui needed to stop "crying and bawling," which she perceived to be belittling toward women;

6)      Denial of an opportunity to participate in a private dealer class given by Levine;

7)      Her termination.

[Exs. 22-24, 27; Depo. at 218-264].

On July 18, 2007, the EEOC issued Plaintiff a right to sue letter and Plaintiff filed her lawsuit against Horseshoe on October 16, 2007. [Rec. Doc. 1]. Plaintiff's complaint included the same allegations of discrimination that were included in her Charge of Discrimination to the EEOC, and also included an unlawful retaliation claim with respect to her termination. [Rec. Doc. 1].

Defendant Horseshoe filed a Motion for Summary Judgment on the grounds that many of Plaintiff's claims are untimely because the alleged acts of discrimination occurred more than 300 days prior to the date Plaintiff filed her EEOC Charge of Discrimination, and that of those claims that were timely filed, Plaintiff cannot establish a prima facie case of discrimination. Moreover, Defendant asserts that even if Plaintiff were able to establish a prima facie case, Horseshoe had legitimate, nondiscriminatory and nonretaliatory reasons for all actions taken with respect to Plaintiff. Defendant requests the Court grant its motion for summary judgment and dismiss Plaintiff's lawsuit in its entirety, with prejudice. [Rec. Doc. 33].

## II.    SUMMARY JUDGMENT STANDARD

allowed to work as a poker dealer and was not receiving "tokes." Rather, Plaintiff was working as a chip runner and claims she should have been paid at a rate of $7.50 per hour. [Ex. 25].

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). A genuine issue can be resolved only by a trier of fact because it may be resolved in favor of either party. *Id.* at 248-49, 106 S.Ct. 2510. A fact is "material" if it can "affect the outcome of the suit under the governing law." *Id.* Facts that are irrelevant or unnecessary for determination of the suit should not be considered. *Id.* The substantive law will determine which facts are "material." *Id.*

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 2556 (1986). When a defendant moves for summary judgment on the plaintiff's claim, he may satisfy the summary judgment burden by (1) showing there is no evidence to support an essential element of the plaintiff's claim, or (2) submitting summary judgment evidence that negates one of the essential elements of the plaintiff's claim. *Id.* 477 U.S. at 322-24, 106 S.Ct. at 2553; *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). If the motion is properly made, the plaintiff "must set forth facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; 106 S.Ct. at 2511. This burden is not satisfied by "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co., Inc.*, 403 F.3d 536, 540 (5th Cir. 2005). Instead, the plaintiff "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

Page 7

The standard for summary judgment mirrors the standard for a directed verdict under Fed.

R. Civ. Pro. 50(a). As the Supreme Court has oft repeated:

> "Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a *scintilla* of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."

*Anderson,* 477 U.S. at 251, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson,* 81 U.S. 442, 448, 20 L.Ed. 867 (1872). In essence, the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. All reasonable doubts about the facts are to be resolved in favor of the plaintiff. *Cooper Tire & Rubber Co. v. Farese,* 423 F.3d 446, 456 (5th Cir. 2005).

## III.    DISCUSSION

### A.    Plaintiff's Official Charge of Discrimination

The filing of an official Charge of Discrimination with the EEOC is a jurisdictional prerequisite to maintaining a Title VII action. *Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir. 1995). The scope of the Title VII action may "extend as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Fine v. GAP Chem. Corp.,* 995 F.2d 576, 578 (5th Cir. 1993).

Horseshoe contends Plaintiff is precluded from asserting a retaliation claim because she

failed to exhaust her administrative remedies, as the retaliation claim was not presented to the EEOC.[3] Plaintiff did not check the retaliation box on her Charge of Discrimination, nor did she specifically mention a retaliation claim in her charge questionnaire or other submissions to the EEOC. [Exs. 22-24]. However, Horseshoe's argument overlooks the Fifth Circuit precedent providing that a Title VII cause of action

> may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.

*Dollis*, 77 F.3d at 781; *GAF Chem. Corp.*, 995 F.2d at 578 (quoting *Fellows v. Universal Restaurants, Inc.*, 701 F.2 447, 451 (5th Cir. 1983), *cert. denied*, 464 U.S. 828, 104 S.Ct. 102 (1983)). "This rule protects unlettered lay persons making complaints without legal training or the assistance of counsel." *GAF Chem. Corp.*, 995 F.2d at 578.

Plaintiff's official charge, charge questionnaire, and letter to the EEOC included allegations of harassment and discrimination on the basis of race, national origin, sex, and age. In her letter to the EEOC, Plaintiff stated that on July 31, 2005, when she bent over to rearrange cards in a cabinet drawer, Levine remarked: "Thu don't bend over like that I am a single man, it makes me horny." [Ex. 24]. Plaintiff reported the remark to Judith Yates, who is an assistant director. Further, she states that on March 17, 2006, she went to Robin Hamblin, director of table games, "to get [her] problems solved," and was required to inform all of her supervisors about this meeting. [Ex. 24]. In the Charge Questionnaire, Plaintiff stated:

---

[3]Horseshoe cites *Carpenter v. Wal-Mart Stores, Inc.*, 2008 WL 2117146, *11-12 (W.D. La), in which the district court granted summary judgment for failure to exhaust administrative remedies concerning retaliation claims where plaintiff did not check the box for retaliation or specifically allege retaliation in the text of the charge.

Right after I went to see Mrs. Robin Hamblin on March 17, 2006 about getting my problems solved, on March 19, 2006, I got three final written warnings, which Howard and his girlfriend and Doug Tilton made up a malicious lie. That's when they start to have there [sic] paper trail so they can prepare to get me fired.

[Ex. 23, ¶ 14].

Plaintiff's deposition testimony makes clear that her retaliation claim arises out of these incidents:

Q:   So you're claiming that Judith started retaliating against you in September of '05 just because you were doing things wrong?

A:   Because of I make the remark to Howard, I mean, I make the report of Howard's remark.

***

Q:   What other acts of retaliation are you claiming?

A:   The writing, all these write ups, all this write up after the 19th, you know, when I went to see Robin Hamblin. They can't get rid of me by getting on my nerves, by, you know, giving me a hard time, so they start writing me up. Okay, and after writing me up, then they planning changing the rule in the poker room, which is I do seating all along. They can't find anything else that they know how I am working fast that I'm going to violate some rule.

Q:   Okay. Let me ask you this. What specific facts or information do you have that all these warnings and all these disciplinary things that they talked about with you, what specific facts or information do you have that support your claim that those were in retaliation for you complaining about Howard's remark?

A:   Prior to that, prior to that time I worked up to the March 19th, I don't have that many complaints. I don't have that many write ups, other than the making the mistake that one time... Okay, what I'm saying that I don't, okay, if you look at my record from the time I worked until March 19th, you see how many, and from the March 19th and down, see how many.

Q:   So when are you saying that the retaliation started? Is it from March 19th forward, or is it everything?

A:   Okay. It started right after the August, right after August '05.

[Depo. at 249-251].

Although Plaintiff did not expressly state a claim for retaliation in her official EEOC charge, her retaliation claim arises out of the same factual allegations included in the charge, and "could reasonably be expected to grow out of the initial charges of discrimination." *See Dollis*, 77 F.3d at 781; *see also, GAF Chem. Corp.*, 995 F.2d at 578. Moreover, Plaintiff is a Vietnamese woman who has difficulty with the English language and is proceeding on her claims *pro se*. Dismissing her claims for failure to "check the box" would cause unjust prejudice and defeat the purpose of the rule enunciated above. Accordingly, the Court finds that the substance of Plaintiff's retaliation claim can be ascertained from the factual allegations contained in her official Charge of Discrimination and should not be dismissed for failure to exhaust administrative remedies.

**B.      Timeliness of Plaintiff's Claims Based on Failure to be Initially Hired as a Poker Dealer, Failure to Pay Correct Wages, and Levine's Purported Sexual Remark**

Title VII and the ADEA mandate that a person wishing to pursue a claim for employment discrimination shall file a charge with the EEOC within 180 days "after the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1626.7. In a deferral state like Louisiana, this time period is extended to 300 days from the complained-of-conduct. *Janmeja v. Bd. of Supervisors of LSU*, 96 Fed.Appx. 212, 214 (5th Cir. 2004). If the employee fails to timely submit an EEOC charge, the employee is precluded from challenging the alleged discriminatory conduct in court. 42 U.S.C. § 2000e-5(f)(1); *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 127 S.Ct. 2162, 2166-67 (2007), *rev'd on other grounds*, PL 111-2, 2009 § 181. The Supreme Court recently held that a "charge" is timely filed if it includes not only the information required by the regulations (i.e., an allegation and the name of the charged party) but can also "be reasonably

construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Fed. Ex. Corp. v. Holowecki*, 128 S.Ct. 1147, 1157-58 (2008).

The first evidence of any written communication by Plaintiff with the EEOC sufficient to constitute a "charge" under Title VII or the ADEA is Plaintiff's Charge Questionnaire, dated September 26, 2006. [Ex. 23]. Horseshoe contends that all acts occurring before November 30, 2005 (i.e., 300 days from September 26, 2006) are untimely and not properly before the Court. The initial hiring decision was made no later than March 18, 2005, the only two paychecks Plaintiff contends were acts of pay discrimination are dated March 24, 2005 and April 7, 2005, and Levine's alleged sexual remark was made on July 31, 2005. All of these acts occurred long before the 300th day preceding Plaintiff's Charge Questionnaire.

Plaintiff argues that her first contact with the EEOC was not September 26, 2006, but sometime before June 28, 2006, or before her termination. She claims she first contacted the EEOC in New Orleans, Louisiana while she was still employed at Horseshoe, but was told that her charging information had been sent to Houston. She speculated that this was due to Hurricane Katrina. [Plaintiff's Ex. A, ¶ 26]. Nevertheless, there is no documentation in the record indicating that Plaintiff made any contact with the EEOC prior to September 26, 2006. Even assuming *arguendo* that Plaintiff did contact the EEOC prior to her termination, there is no evidence that the submitted documentation was sufficient to constitute a "charge" under Title VII or the ADEA. *Holowecki*, 128 S.Ct. at 1157-58. Plaintiff states only that she "contacted" the EEOC. [Plaintiff's Ex. A, ¶ 26]. She does not present any information that would lead this Court to believe this "contact" was made in

writing[4] or that it was an enforcement request rather than a mere request for information. *See Holowecki*, 128 S.Ct. at 1157. Consequently, the Court finds that any alleged contact with the EEOC prior to September 26, 2006 is not sufficient to constitute a "charge" under Title VII and the ADEA.[5] Plaintiff's claims concerning the initial hiring decision, the purported "cheated paychecks" dated March 24, 2005 and April 7, 2005, and Levine's alleged sexual remark are therefore untimely[6] and Plaintiff is precluded from proceeding with these claims.

## C.    Age Discrimination

Plaintiff alleges she was discriminated against on the basis of her age in violation of the ADEA.[7] [Rec. Doc. 1; Ex. 22]. The following acts, which occurred within the applicable limitations

---

[4]Title VII requires a charge be "in writing under oath or affirmation." 42 U.S.C. § 2000e-5(b). Likewise, the ADEA requires a charge to "be in writing;" charges received in person or by telephone shall be reduced to writing. 29 C.F.R. § 1626.6. Here, there is no written documentation whatsoever, by Plaintiff or the EEOC, prior to September 26, 2006.

[5]Contrary to Plaintiff's contention, the"equitable tolling" doctrine does not apply to this case. "A Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period—180 or 300 days—set forth in 42 U.S.C. § 2000e-5(e)(1)." *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122, 122 S.Ct. 2061, 2077 (2002). Plaintiff's claims are premised on identifiable discrete acts—initial hiring decision, purported "cheated paychecks" dated March 24, 2005 and April 7, 2005, and Levine's alleged sexual remark—and Plaintiff does not present sufficient justification for equitable tolling of the limitations period.

[6]Even though Plaintiff untimely filed a "charge" with respect to Levine's alleged sexual remark, the "continuing violation" doctrine allows such statements to be considered in analyzing a claim for hostile work environment. *Morgan*, 536 U.S. at 122 ("A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."). Thus, when analyzing Plaintiff's sex discrimination, *see* Part III, D, *infra*, the Court will take into consideration Levine's alleged sexual remark.

[7]Plaintiff official EEOC Charge of Discrimination states that she was discriminated against on the basis of age in violation of Title VII. *See* Ex. 22. However, Title VII only makes it unlawful for an employer to discriminate against any individual with respect to his

period, form the basis for her age discrimination claims:[8]

    1)      The failure to promote Plaintiff to a poker dealer during her employment;

    2)      The alleged denial of an opportunity to participate in a private dealer class given by Levine; and

    3)      Her termination.[9]

[Rec. Doc. 1; Exs. 22-23]. During her deposition, Plaintiff was asked to articulate the "specific facts or information" which supported her claim that the above acts were taken because of her age. Plaintiff stated that (1) an unidentified "older lady" was not hired as a poker dealer, (2) she never saw anyone over 50 hired as a dealer, (3) she subjectively believed that Jones wanted younger dealers, and (4) she overheard Levine remark that eventually the poker room would have only "young and pretty people in here." [Depo. at 230-33, 240-41, 270-72].

Under the ADEA, it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 28 U.S.C. § 623(a)(1). A plaintiff may demonstrate discrimination in one of two ways, either through direct evidence or

---

compensation, terms, conditions or privileges of employment, "because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Age is not a characteristic protected by the statute. *Id.*; *Piper v. Veneman*, 183 Fed.Appx. 407, 410 (5th Cir. 2006).

[8]Plaintiff also claims that the failure to initially hire her as a poker dealer was an act of discrimination based on her race, national origin, sex and age. However, as discussed above, this act occurred outside the applicable limitations period and may not be asserted in this court. *See* Part III, B, *supra.*

[9]Horseshoe points to Plaintiff's deposition testimony wherein she stated she was no longer claiming that her termination was due to her age, sex, race, or national origin. [Depo. at 245-56]. However, it is apparent that Plaintiff had difficulty understanding the questions and stating the basis for her claims. Therefore, in an abundance of caution, the Court will address the merits of Plaintiff's claim with respect to her termination.

circumstantial evidence. *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). A plaintiff relying on circumstantial evidence, as in this case, must first establish a prima facie case of discrimination by a preponderance of the evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). To establish a prima facie case of age discrimination, Plaintiff must show that (1) she suffered an adverse employment action, (2) she was qualified for the position, (3) she was a member of a protected class, and (4) she was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise suffered the adverse employment action because of her age. *Berquist*, 500 F.3d at 349 (citing *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)). If the plaintiff is able to set forth a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 420 (5th Cir. 2006). Once the employer articulates a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to raise a genuine issue of material fact that the employer's reason is merely pretextual. *Id.* (citing *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003)).

With respect to Plaintiff's alleged denial of an opportunity to participate in a private dealer class, this act does not constitute an "adverse employment action." Historically, "adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)). The denial of an opportunity to participate in the private dealer class was an act by a person acting outside the scope of his employment, as the private dealer class was neither sponsored nor authorized by Horseshoe. Moreover, Levine's refusal to allow Plaintiff to participate was not akin to an "ultimate

employment decision," such as hiring, discharging, promoting, demoting, granting leave, or compensating.

With respect to the failure to promote Plaintiff to poker dealer and her termination, which presumably constitute "adverse employment actions," she cannot demonstrate that she was qualified for the position of poker dealer. As explained above, Plaintiff was unable to successfully pass an audition during her employment and her poker dealing skills were determined to be "woefully inadequate" for purposes of dealing live poker in Horseshoe's poker room. [Jones Affidavit, ¶ 8]. Nor can Plaintiff show that the actions were taken because of her age. Of the 42 people hired as poker dealers by Horseshoe in March 2005, at least five were older than Plaintiff[10] and seven other hirees were over the age of 50.[11] [Jones Affidavit, ¶ 10]. Many applicants who were not hired were substantially younger than Plaintiff, including some applicants who were under the age of 30. *Id.* Based on these facts, Plaintiff cannot establish a prima facie case of age discrimination.

Moreover, even if Plaintiff was able to establish a prima facie case, Horseshoe has articulated a legitimate, nondiscriminatory reason for its decisions. Prior to her termination, Plaintiff received numerous written warnings concerning her attitude with co-workers and shift-supervisors. The decision to terminate her employment was made only after Plaintiff acted insubordinately to a shift-supervisor despite having received a final written warning and being placed on a 90-day developmental plan. [Ex. 15].

Plaintiff's inability to work as a poker dealer and "gross insubordination" are certainly

---

[10]Raymonde Anderson, age 60; Charles Coddou, age 61; Cathy Edwards, age 56; Glenda Hunt, age 59; and Mae McCullars, age 56.

[11]Thomas Bagley, age 51; Mary Bell, age 50; Margaret Boyte, age 51; Rachel Ginsberg, age 51; Terry Hughes, age 52; John Smith, age 51; and John Vargn, age 54.

legitimate, nondiscriminatory reasons for Horseshoe's actions. Because Plaintiff has failed to present any evidence (other than her subjective belief)[12] that Jones did not honestly believe Plaintiff's dealing skills were inadequate or that she was insubordinate in violation of Horseshoe's policies, she cannot satisfy her burden of demonstrating pretext. Accordingly, the Court finds there is no genuine issue of material fact creating a triable issue on Plaintiff's age discrimination claim.

### D.    Sex Discrimination

Plaintiff asserts the following acts form the basis of her sex discrimination claim: (1) Levine's July 31, 2005 remark ("Thu, don't' bend over like that I am a single man, it makes me horny"),[13] (2) Jones alleged remark that she needed to stop "bawling and crying," which she contends is belittling toward women in general, (3) Levine's comment that the poker room would soon "be nothing but young and pretty people," and (4) Levine's alleged offer to give Plaintiff private lessons, which she contends was "apparently in exchange for being his girlfriend. [Depo. at 257-60; Rec. Doc. 38]. Plaintiff acknowledges that her claim is best analyzed as a claim of sex discrimination due to hostile work environment.[14] [Depo. at 141, 230-32, 260-62; Rec. Doc. 38].

To establish a prima facie case of hostile work environment under Title VII, Plaintiff must prove: (1) she is a member of a protected class, (2) she was subjected to unwelcome harassment, (3)

---

[12]Plaintiff's subjective belief that she was discriminated against on the basis of her age is insufficient to create a jury issue when the employer articulates a legitimate, nondiscriminatory reason for the employment action. *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 152 (5th Cir. 1995).

[13]*See* n.6, *supra.*

[14]*See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367 (1993) (defining "hostile work environment" as "a workplace permeated with discriminatory intimidation, ridicule, or insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment").

the harassment complained of was based on sex, and (4) the harassment affected a term, condition, or privilege of employment. *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 479 (5th Cir. 2008); *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003). Even if the Court were to find Plaintiff can satisfy the first three elements, Horseshoe argues that she failed, as a matter of law, to establish the fourth element. "To affect a term, condition, or privilege of employment, the harassment 'must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Aryain*, 534 F.3d at 479 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399 (1986)) (internal brackets omitted). The work environment must be deemed "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275 (1998)). In determining whether a work environment is "hostile" or "abusive" within the meaning of Title VII, courts must look to the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367 (1993).

Furthermore, hostile work environment claims cannot be based on discrete acts. *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S.Ct. 2061, 2073 (2002); *Faragher*, 524 U.S. at 788 ("isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"). Rather, a hostile work environment claim must be based on the cumulative effect of individual acts which occur over a period of days or even years. *Morgan*, 536 U.S. at 115; *Meritor Sav. Bank*, 477 U.S. at 67 ("mere utterance of an . . . epithet which

engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII.").

In the present case, Plaintiff points to four discrete remarks as the basis for her hostile work environment. None of the remarks were egregious or physically threatening, nor did the remarks substantially interfere with Plaintiff's employment. The "young and pretty" remark was not directed toward Plaintiff or facially based on sex. Further, Plaintiff admits she found Levine's July 31, 2005 comment to be complimentary and that she found the "bawling and crying" only to be "belittling"; she does not claim that any of these remarks affected a term, condition, or privilege of employment. [Depo. at. 259]. And although Plaintiff alleges in her response (for the first time) that Levine offered her private training in exchange for sex, she admits that Levine did not expressly say anything sexual in nature; rather, she merely interpreted his invitation for private lessons to mean that he wanted something sexual in nature. [Rec. Doc. 38, p.17].

The alleged remarks were not objectively or subjectively offense, hostile, or abusive. Also, there is no evidence that Jones, Levine, or any other supervisor "made unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of physical nature" or that "submission to this conduct was made an implicit or explicit term or condition of employment, or that submission to or rejection of such conduct was used as the basis for an employment decision affecting her." *See* 28 Fair Empl.Prac.Cas. (BNA) 1843, *2 (1982). Accordingly, the Court finds none of the alleged remarks, whether viewed in isolation or collectively, affected a "term, condition, or privilege of employment," and are thus insufficient to establish a prima facie case of sex discrimination due to hostile work environment.

E.      **Race/National Origin Discrimination**

Plaintiff alleges she was discriminated against on the basis of her race and national origin in violation of Title VII. [Rec. Doc. 1; Ex. 22]. The following acts, which occurred within the applicable limitations period, form the basis for her racial/national origin discrimination claims:[15]

1)      The failure to promote Plaintiff to a poker dealer during her employment;

2)      Her termination.[16]

[Rec. Doc. 1; Exs. 22-23].

Under the *McDonnell Douglas* evidentiary framework, in order to establish a prima facie case of racial discrimination, Plaintiff must show that she: (1) belongs to a racial minority, (2) was qualified for a position for which Horseshoe was seeking applicants, (3) suffered an adverse employment action, and (4) was treated differently from others similarly situated. *McDonnell Douglas, supra*, 411 U.S. at 802, 93 S.Ct. at 1824; *Abaca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005).

Although Plaintiff is a member of a protected class (based on her race, Asian, and national origin, Vietnamese), there is substantial evidence that Plaintiff was not qualified for the position of poker dealer. *See* Part III, C, *supra*. In addition, there is no evidence that the actions were taken because of her race or national origin. In 2005, Jones hired another Asian (Job Chalik) for a poker dealer position after Plaintiff unsuccessfully auditioned for the job. [Jones Affidavit, ¶ 11].

Even if Plaintiff was able to establish a prima facie case, Horseshoe has articulated a legitimate, nondiscriminatory reason (gross insubordination) for its decision to terminate Plaintiff. *See* Part III, C, *supra*. The only evidence that Plaintiff asserts shows Horseshoe's reason was pretext

---

[15]*See* n.8, *supra.*

[16]*See* n.9, *supra.*

is (1) a reference in the 30-day Snapshot, dated April 14, 2005, that there was a "slight language barrier," and (2) her subjective belief that these actions were taken because she was Asian. [Ex. 7; Depo. at 234-36, 241-44]. But isolated comments in the workplace that do not relate to the protected class of which the plaintiff is a member and are not related to the employment decision at issue are not sufficient evidence of discrimination. *See Manning, supra*, 332 F.3d at 882 (holding that an employer who used the word "nigger" in the presence of an African American employee was not sufficient evidence of discrimination, as the comment was not proximate in time to the employment action or related in any way to an employment decision). Nor is Plaintiff's subjective belief that discrimination occurred on the basis of her race or national origin sufficient to create a triable issue for the jury. *See* n.12, *supra.*

Accordingly, the Court finds Plaintiff is unable to establish a prima facie case of racial discrimination and that, even if a prima facie case existed, Horseshoe has articulated a legitimate, nondiscriminatory, non-pretextual reason for the employment actions.

### F.     Retaliation

Plaintiff claims she was retaliated against after she reported Levine's July 31, 2005 remark to Human Resources and after she spoke with Robin Hamblin on March 17, 2006 about her problems. *See* Part III, A, *supra.* The following acts for the basis for her retaliation claim:

1)     The written warnings she received after purportedly complaining to management;

2)     The alleged increased scrutiny and poor treatment by her supervisors; and

3)     Her termination.

[Depo. 245-52].

To establish a prima facie case of retaliation, Plaintiff must show: (1) she participated in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the materially adverse action. *Aryain, supra*, 534 F.3d at 484 (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)). If the Plaintiff is unable to establish a prima facie case, the retaliation claims must be dismissed as a matter of law. *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 Fed.Appx. 437, 440 (5th Cir. 2007); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 429 (5th Cir. 2000) (if a plaintiff is unable to establish a prima facie case of unlawful retaliation, the Court need not proceed to the second and third prongs of the *McDonnell Douglas* framework).

The anti-retaliation provision of Title VII does not protect an individual from all retaliation, only retaliation that produces an injury or harm. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S.Ct. 2405, 2414 (2006). In *Burlington Northern*, the Supreme Court held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," which means that the action may have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.*, 548 U.S. at 68, 126 S.Ct. at 2415 (internal quotations and citations omitted). The materiality requirement reflects the importance of separating "significant from trivial harms." *Id.* "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often taken place at work and that all employees experience." *Id.* After all, Title VII does not set forth "a general civility code for the American workplace." *Id.* (quoting *Oncale v. Sun downer Offshore Serv., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998 (1998)).

To prove she suffered an adverse employment action, Plaintiff asserts that her supervisors

created a paper trail of written warnings to get rid of her and repeatedly subjected her to negative treatment at work, that rules were changed regarding seating in the poker room, and that she was ultimately terminated from employment. [Depo. at 246-56]. But other than termination, these actions fall into the category of "petty slights, minor annoyances, and simple lack of good manners" that employees regularly encounter in the workplace. *Aryain*, 534 F.3d at 485 (negative treatment, undesired transfer to another department, undesirable break schedule, and assignment of more arduous and dirty jobs are not adverse employment actions in the retaliation context); *DeHart*, 214 Fed.Appx. at 442 (a written warning for insubordination would not "have dissuaded a reasonable worker from making or supporting a charge of discrimination."). Thus, the written warnings, negative treatment, and alleged rule changes are simply not actionable as adverse employment actions in the retaliation context.

In order for Plaintiff to establish a causal link between her termination and the protected activity, she must show that the decision to terminate her employment was based in part on knowledge of the protected activity. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). Here, there is no evidence that Jones made the decision to terminate Plaintiff's employment without knowledge of any complaint that she was being discriminated against. [Jones Affidavit, ¶ 21, Exs. 22-23]. Jones knew Plaintiff was upset about not being able to deal, but she never complained to him or any other supervisor that she believed she was not allowed to deal because of her race, national origin, sex, or age.

Further, even if Plaintiff was able to establish a causal connection between the protected activity and her termination, Horseshoe had a legitimate, nondiscriminatory and nonretaliatory reason (gross insubordination) for terminating Plaintiff's employment, and Plaintiff's subjective

belief is insufficient to raise a triable issue of fact as to pretext. *See* Part III, C and n.12, *supra.* Hence, Plaintiff's retaliation claim is without merit and must be dismissed.

## IV. CONCLUSION

Plaintiff's claims concerning the failure to initially hire her as a poker dealer, the failure to pay the correct wages in March/April 2005, and Howard Levine's alleged sexual remark are untimely because the alleged acts of discrimination occurred more than 300 days prior to the date Plaintiff filed her EEOC Charge of Discrimination. Of the claims that were timely filed, Plaintiff cannot establish a prima facie case of discrimination. Even if Plaintiff were able to establish a prima facie case, Horseshoe had legitimate, nondiscriminatory and nonretaliatory reasons for all actions taken with respect to Plaintiff's employment. Accordingly, the Court finds there is no genuine issue of material fact and Horseshoe is entitled to judgment as a matter of law.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this ___5___ day of March, 2009.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE